IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FARM CREDIT SERVICES OF AMERICA, FLCA,<br><br>        Plaintiff,<br><br>v.<br><br>RICHARD KNUPPE,<br><br>        Defendant. | Case No. _____<br><br>**VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION AND DAMAGES AND DEMAND FOR JURY TRIAL** |

Farm Credit Services of America, FLCA ("Farm Credit") for its claim for relief against the Defendant, Richard Knuppe ("Knuppe"), states and alleges as follows:

### THE PARTIES

1. Farm Credit is a federally-chartered instrumentality with its headquarters and principal place of business in Omaha, Douglas County, Nebraska. Farm Credit is a citizen of Nebraska pursuant to 12 U.S.C. § 2258.

2. Knuppe is an individual residing in or around Hill City, South Dakota and is a citizen of the State of South Dakota.

### VENUE AND JURISDICTION

3. This Court has original jurisdiction over the issues presented in the Complaint pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity between the parties. Farm Credit is a citizen of the State of Nebraska, and Knuppe is a citizen of the State of South Dakota. The amount in controversy exceeds $75,000.00.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) as Knuppe consented to the exclusive jurisdiction of this Court for litigation of the matters at issue in this

Complaint in Paragraph 8 of his Assignment, Nonsolicitation, and Nondisclosure Agreement with Farm Credit ("Agreement"), a true and correct copy of which is attached hereto as **Exhibit A**.

## ALLEGATIONS OF FACT

### A. Business of the Parties

5.  Farm Credit is part of the federal Farm Credit System, soliciting private hail insurance, livestock risk protection, and federally-reinsured multiple peril crop insurance ("MPCI"), which includes revenue protection, yield protection, livestock insurance, named peril insurance, and other crop insurance plans issued under the authority of the Federal Crop Insurance Act, 7 U.S.C. § 1508 *et seq.* (collectively "crop insurance"), to farmers and ranchers throughout Iowa, Nebraska, South Dakota, and Wyoming, its chartered territory.

6.  Knuppe is a Livestock Advisor, LRP, PRF, & Crop Agent with Logic AG Marketing ("Logic AG"), a competing crop insurance business. Logic AG is a competitor of Farm Credit engaged in the business of selling crop insurance.

### B. Farm Credit Customer Relationships

7.  Knuppe was employed by Farm Credit as an Insurance Officer from on or about September 12, 2014. On January 1, 2015, in consideration of continued employment and participation in Farm Credit's short-term incentive plan, Knuppe signed the Agreement. The Agreement remains effective through Defendant's last day of employment on June 18, 2025, and thereafter, when he voluntarily terminated his employment with Farm Credit.

8.  As an Insurance Officer, Knuppe's duties included, but were not limited to,

soliciting crop insurance to existing Farm Credit customers, servicing the customers, as well as identifying, soliciting, and servicing new crop insurance customers on behalf of Farm Credit. As part of his duties, Knuppe was required to learn the customers' needs, histories, financial risk profiles, and business operations to identify the appropriate crop insurance coverages for the customers and to sell and service the crop insurance policies to and for the customers. Knuppe was also charged with maintaining, growing, and promoting positive relations with all the customers. The development and maintenance of strong personal relationships with the customers was a critical part of Knuppe's job duties in this position.

9.     Knuppe traveled to Nebraska to attend and complete training in the course of his employment with Farm Credit.

10.    Throughout his employment at Farm Credit, Knuppe occupied a position of substantial trust and confidence. As part of his duties, Knuppe had access to the Farm Credit customer relationship management database ("Salesforce") and the Farm Credit crop insurance database ("AgentPro"). The Salesforce and AgentPro databases contain extensive trade secrets and confidential information of Farm Credit. They are nonpublic databases that contain substantial amounts of information that cannot be purchased and are produced and created through extensive employee effort and the experience of Farm Credit.

11.    Farm Credit has, through the course of its business, developed a large customer base, and its records, including the Salesforce and AgentPro databases, contain extensive information and account history for its customers, which constitute an original list, collection, and compilation of such customers. The list identifies each

customer, the contact person, telephone number, the insurance sales history, and nature of crop insurance purchased, among other details.

12.   Farm Credit considers all the information recorded in the Salesforce and AgentPro databases regarding its customers to be confidential and much of it to constitute trade secrets. (All of the foregoing described information in the Salesforce and AgentPro databases is collectively referred to as the "Trade Secrets").

13.   The information and knowledge is valuable and is closely guarded by Farm Credit through reasonable steps to maintain its confidentiality, in part because it is not available to the general public or Farm Credit's competitors. These steps include, but are not limited to, maintaining the Salesforce and AgentPro databases on a computer network which has robust security. Farm Credit assigns passwords to the network for those who need to access it. The operational facilities where the Insurance Officers are located are secured by passcard access. The waiting areas can be accessed by the public but members of the public must check in at the Farm Credit retail office and are escorted by an employee. Visitors to the Farm Credit headquarters must present identification, wear a visitor badge and may not access the facility without an employee escort. All employees are required to wear identification in the headquarters.

14.   In his capacity as an Insurance Officer, Farm Credit gave Knuppe access to its Salesforce and AgentPro databases and to its customers. It also gave Knuppe access to customer information on the insurance company websites as an appointed agent for Farm Credit. Farm Credit further paid Knuppe to develop and maintain positive relationships and goodwill with customers and to garner repeat business, all for the

4

benefit of Farm Credit. Farm Credit fostered and supported those relationships through training, promotional items, and paying for meetings between Knuppe and customers, among other support. It also allowed him to be the primary contact for Farm Credit to develop relationships with customers on its behalf and for its benefit.

15. As part of its efforts to keep its Trade Secret information confidential and secret, as well as part of its efforts to maintain customer goodwill, Farm Credit required Knuppe and all other similarly situated employees to execute the Agreement.

16. Under the Agreement, Knuppe agreed in relevant part as follows:

> 2. **NONSOLICITATION OF CUSTOMERS**. For a period of two (2) years following the termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall not, seek or accept employment with, and will not call on or solicit the business of, or sell to, or service (directly or indirectly, on Employee's own behalf or in association with or on behalf of any other individual or entity), any of the customers of FCSAmerica and/or Frontier with whom Employee actually did business and had personal contact while employed by FCSAmerica or Frontier, except to the extent such activities are unrelated to and not competitive with the business, products or services that Employee offered or provided on behalf of FCSAmerica or Frontier and cannot adversely affect the relationship or volume of business that FCSAmerica and/or Frontier have with such customers.
>
> 4. **NONDISCLOSURE OF CONFIDENTIAL INFORMATION**. During the term of Employee's employment with FCSAmerica and Frontier and following the termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall not use for any purpose or divulge, disclose, or communicate to any person or entity, in any manner whatsoever, any Confidential Information acquired during or as a result of Employee's employment with FCSAmerica and/or Frontier. Employee agrees that the Confidential Information is proprietary to FCSAmerica or Frontier and is owned solely by FCSAmerica or Frontier, and that the disclosure thereof would cause irreparable harm and damage to the business of FCSAmerica and/or Frontier. Employee will not access, copy, download, transmit, or reproduce any Confidential Information (whether stored electronically or otherwise) for any

purpose other than furthering the business interests of FCSAmerica and Frontier. Employee will never use or disclose Confidential Information (even following the termination of employment) for any purpose other than furthering the business interests of FCSAmerica or Frontier. Upon termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall immediately return to FCSAmerica and Frontier, respectively all data, materials and other documents containing or related to any Confidential Information belonging to each respectively.

17. Hereinafter, those Farm Credit customers with whom Knuppe actually did business and had personal contact during his Farm Credit employment are referred to as "Customers."

18. The execution of the Agreement was a condition of Knuppe's continued employment, his continued access to the Customers, his continued access to confidential information and Trade Secrets, and his participation in any incentive plans, in addition to other valuable consideration.

19. Although Knuppe voluntarily terminated his employment with Farm Credit effective June 18, 2025, his contractual obligations with respect to the Customers and Trade Secrets continued as specified in paragraphs 2 and 4 of the Agreement.

C.  **Defendant's Wrongful Acts**

20. Upon information and belief, Knuppe failed to return all Farm Credit Confidential Information upon his resignation, and Knuppe has retained and/or used Confidential Information for purposes other than furthering the business interests of Farm Credit, including at minimum, the phone numbers of customers and/or team members.

21. Following the termination of his employment with Farm Credit, Knuppe began employment with Logic AG Marketing, a company in direct competition with Farm

6

Credit for crop insurance sale business. Upon information and belief, Knuppe, directly and/or indirectly, began calling on, soliciting, selling and/or servicing Farm Credit Customers for the purpose of selling those same Customers crop insurance through a competitor of Farm Credit. Such conduct has adversely affected the relationship and/or volume of business that Farm Credit has with such Customers.

22. Upon information and belief, since the termination of his employment with Farm Credit, Knuppe and/or others with whom he is associated, cooperating, working and conspiring with have encouraged Customers to request to cancel their crop insurance through Farm Credit and/or to make application to transfer their crop insurance business to Logic AG Marketing. With Knuppe's assistance, at least one Customer has requested to move their crop insurance business away from Farm Credit since the termination of Knuppe's employment with Farm Credit.

23. Moreover, upon information and belief, at least six (6) Customers have thus far cancelled policies with Farm Credit, primarily those tied to forage and grazing. Upon information and belief, those Customers moved that business to Knuppe and/or Logic AG. Many of the Customers with whom Knuppe worked had been customers of Farm Credit for several years. Farm Credit assigned Customers to Knuppe to service and allowed him to be the only Insurance Officer for those Customers to the exclusion of others at Farm Credit.

24. There is no way to calculate the damages attributable to the loss of Customer relationships because it is impossible to measure, for instance, how much the Customer portfolio might have grown if it had not transferred; what assets the Customer may have earned, inherited, or won over time; or what potential referrals the Customer

might have made. At minimum, based on the present volume of the Customer business, Farm Credit conservatively estimates that it will lose well over $75,000 if the business formerly serviced by Knuppe is lost.

25. Many Customers have also had MPCI, crop hail, and other livestock policies through Farm Credit for several years. In Farm Credit's experience, many customers place their coverage through the same agent. If the Customers who have moved (or continue to move) their forage and grazing coverage also move their other coverage, Farm Credit's losses will increase.

26. It is difficult, if not impossible, to determine how much business Farm Credit will ultimately lose if Knuppe is allowed to continue to solicit the business of the Customers in breach of the Agreement. There are approximately 214 Customers with whom Knuppe did business and had personal contact during his employment at Farm Credit.

## FIRST CAUSE OF ACTION

### Enforcement/Breach of Contract

27. Farm Credit incorporates by reference paragraphs 1 through 26 above.

28. Knuppe, by retaining and failing to return Confidential Information belonging to Farm Credit, including, at minimum, Customer phone numbers, has breached the non-disclosure of confidentiality provision of the Agreement.

29. Knuppe, by engaging in the conduct described above during the restricted period specified in paragraph 2 of the Agreement, has breached the non-solicitation provision of the Agreement, including directly or indirectly on his own behalf or in association with or on behalf of others, by soliciting, calling upon, selling to and/or

servicing of Customers with whom he had personal contact and did crop insurance business during his employment at Farm Credit.

30. Knuppe willfully and intentionally breached the Agreement and such breach threatens to cause and/or has caused damage to Farm Credit.

31. Farm Credit has performed all of its obligations under the Agreement.

32. Knuppe's breach of the Agreement threatens to and/or has caused Farm Credit irreparable harm in the form of lost revenues, lost profits, loss of trade and commerce, lost opportunity, and lost goodwill. These damages are difficult, if not impossible, to quantify.

33. If Knuppe's conduct in breach of the Agreement continues, Farm Credit will lose significant crop insurance premium revenue as a consequence of Knuppe's actions.

34. Farm Credit has no adequate remedy at law to prevent Knuppe from breaching the Agreement.

35. The sales season for MPCI policies is underway and will continue through March 15, 2026, the federally-mandated deadline for Customers to purchase such policies. After that date, Customers cannot change their MPCI coverage until the next spring sales season in early 2027.

36. The deadline to change agents and/or carriers for certain livestock policies is June 30, 2026.

37. Farm Credit stands to lose significant crop insurance sales if Knuppe and those acting in concert with him, including any competitor(s) of Farm Credit, are not enjoined from breaching the Agreement. Since the Customers typically repeat their

purchases with the same company year-to-year, Farm Credit cannot estimate the losses it will sustain in the future even beyond the 2026 season.

WHEREFORE, Farm Credit requests that the Court:

a. Grant it a temporary restraining order, preliminary and permanent injunctive relief pursuant to Fed. R. Civ. P. 65 enjoining Defendant and others acting in concert with him from violating the Agreement for their individual benefit or on behalf of a competitor of Farm Credit, or anyone else for a period of two years from the date of the Court's order;

b. Award damages in an amount according to proof for the damages Defendant's breach of Contract has caused, including lost profits and the value of the accounts;

c. Award it forfeiture of all compensation paid to Defendant during the period of his disloyalty;

d. Award the costs of this action; and

e. Award such other relief the Court considers appropriate.

## PLACE OF TRIAL AND JURY DEMAND

Plaintiff designates Omaha, Nebraska as the place of trial, and hereby demands a jury trial.

Dated this  9th  day of March, 2026

                FARM CREDIT SERVICES OF AMERICA,
                FLCA, Plaintiff,

            By:  */s/ Sarah L. McGill*
                  Christopher R. Hedican, NE #19744
                  Sarah (Sally) L. McGill NE #24790
            of   BAIRD HOLM LLP
                  1700 Farnam St, Suite 1500
                  Omaha, NE 68102-2068
                  Phone: 402-344-0500
                  chedican@bairdholm.com
                  smcgill@bairdholm.com

**VERIFICATION**

STATE OF NEBRASKA )
) ss.
COUNTY OF DOUGLAS )

Anthony Jesina, being first duly sworn, deposes and states that he is the Senior Vice President Insurance & Consumer Lending for Farm Credit Services of America, FLCA, that he has read the foregoing Verified Complaint, and that the statements are correct to the best of his knowledge.

_____
Anthony Jesina

Subscribed and sworn to before me this 9th day of March, 2026.



_____
Notary Public

General Notary - State of Nebraska
MARCY NOVOTNY
My Comm. Exp. Sept. 4, 2028.

7083072.4

12